## UNITED STATES v. LOEB et al.

### (Circuit Court, S. D. New York. January 19, 1900.)

### No. 2,699.

CUSTOMS DUTIES—APPEAL FROM REAPPRAISAL—JURISDICTION.

Under the provision of section 13 of the customs administrative act of 1890 that the action of a single general appraiser in making a reappraisement "shall be final and conclusive as to the dutiable value of such merchandise, * * * unless the collector shall deem the appraisement of the merchandise too low," the duty of determining whether or not such appraisement is too low is devolved upon the collector, and in the performance of such duty he acts judicially, and his discretion cannot be controlled by his superior officers; hence, when he does not, in fact, deem the appraisement too low, an appeal taken by him by direction of the secretary of the treasury confers no jurisdiction on the board of three general appraisers to review such appraisement, and he is a competent witness to rebut the presumption of jurisdiction arising from the fact of appeal by showing that it was not taken in the exercise of his own judgment.

This was an appeal by the United States from a decision of the board of general appraisers, which sustained certain protests involving the legality of a reappraisement by the board of review of certain imported merchandise.

The decision of the board of classification, written by General Appraiser Somerville, is as follows:

The goods involved in these protests consist of so-called "Swiss embroideries," a small number of handkerchiefs being also included in the importation, all of which were the subject of certain appraisements hereinafter more fully explained. The appraised value of the articles, as ascertained by the local appraiser at the port of New York, was in advance of the invoice value of the goods. The importers called for a reappraisement pursuant to the provisions of section 13 of the customs administrative act of June 10, 1890, which, in each instance, was held accordingly before a single general appraiser, who reappraised the goods, and reduced the advances made by the local appraiser to the extent shown by the record. The collector of customs, being of opinion, as he officially reported, that the appraisements made by the single general appraiser were not too low, declined to comply with the suggestion of the local appraiser that he should transmit the invoices and papers appertaining thereto to a board of three general appraisers for review, under the provisions of said section 13. He did, however, subsequently adopt this suggestion, when requested to do so by the treasury department, under circumstances hereinafter stated, which are claimed by the protestants to have operated upon his official action as a moral and legal duress, it being made to appear that the collector had made no change in his original opinion that the appraisements made by the single general appraiser were not too low. The board of three general appraisers assumed jurisdiction of the cases against the objection of the protestants, who interposed a written demurrer thereto; and the board proceeded to examine and decide the cases under the authority of said section 13. The collector liquidated the entries upon the basis of values ascertained by this board of review, and the importers filed their protests within the time prescribed by law, urging objections to the said liquidation, which are discussed seriatim in this opinion.

1. The first contention of the importers is that the board of three general appraisers never acquired jurisdiction to review the appraisements held by the single general appraiser, for the want of legal compliance with the requirements of said section 13, inasmuch as the collector transmitted the invoice and accompanying papers to the board of three general appraisers under coercion of the treasury department, and in face of the fact that he (the collector) did not deem the appraisement of the merchandise as already made too low. In our judgment, the question of jurisdiction is one which can properly be raised by protest. The rule is well settled by numberless decisions of the courts that, while the valuation of imported merchandise, as appraised by the proper officers, is conclusive upon the parties, "nevertheless the appraisement is subject to be impeached when the appraiser or collector has proceeded on a wrong principle, contrary to law, or has transcended the powers conferred by statute." U. S. v. Passavant, 169 U. S. 16, 21, 18 Sup. Ct. 219, 42 L. Ed. 644, and authorities there cited. Any statutory tribunal which assumes jurisdiction not expressly given by law unquestionably transcends the powers conferred on it by statute. The authority of a board of three general appraisers, sitting as a board of classification, duly organized under section 14 of the act of June 10, 1890, to pass upon questions raised by protests of this character, has been held to be precisely coextensive with a like authority conferred upon the courts by section 15. U. S. v. Klingenberg, 153 U. S. 93, 102, 14 Sup. Ct. 790, 38 L. Ed. 647; Passavant's Case, 169 U. S. 16, 18 Sup. Ct. 219, 42 L. Ed. 644; In re Taylor, G. A. 4072; U. S. v. J. Allston Newhall & Co. (C. C.) 91 Fed. 525. In U. S. v. Murphy, decided by the United States circuit court for the Southern district of New York, per Townsend, J., in December, 1898 (suit 2,704),[1] it was held that a reappraisement of merchandise made by a single general appraiser under the provisions of said section 13 could be successfully challenged by protest, on the ground that the general appraiser who made the reappraisement did not examine any of the goods, nor have before him samples of the same at the time of the reappraisement. When the case was before the board of classification upon protest, that board held that the alleged irregularity was one which could be proved by parol evidence, and was fatal to the jurisdiction of the general appraiser, and, consequently, that his reappraisement was null and void.

---

[1] No opinion filed.

This view of the law was sustained by the court, and the decision was duly acquiesced in by the treasury department. S. S. 20,538 and 18,959. There is nothing in the suggestion of the government counsel that the so-called "reappraisement board" (or board of review) had a legal right to finally determine its own jurisdiction. If such a claim could be successfully made in this case, it could be sustained with equal propriety in every other case which has gone before the courts for review where a like jurisdiction has been assumed. No tribunal whose decisions are subject to review can lawfully be the final arbiter of its own jurisdiction.

2. The important inquiry in this case, and one not entirely free from difficulty, is whether, under the state of facts disclosed at the hearing and by the record, the board of three general appraisers, organized and acting under the authority conferred by said section 13, acquired jurisdiction to "examine and decide" the case thus submitted. The provisions of said section, so far as they are pertinent to the issues raised by the protest, read as follows: "Sec. 13. The decision * * * of the general appraiser in cases of reappraisement shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein, unless the importer, owner, consignee, or agent of the merchandise shall be dissatisfied with such decision, and shall, within two days thereafter give notice to the collector in writing of such dissatisfaction, or unless the collector shall deem the appraisement of the merchandise too low, in either case the collector shall transmit the invoice and all the papers appertaining thereto to the board of three general appraisers, which shall be on duty at the port of New York, or to a board of three general appraisers who may be designated by the secretary of the treasury for such duty at that port or at any other port, which board shall examine and decide the case thus submitted, and their decision, or that of a majority of them shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein, and the collector or the person acting as such shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law." This board of review, sometimes popularly designated the "board of reappraisement," is manifestly a statutory tribunal, with limited powers and jurisdiction. Appraisers, invested with an analogous jurisdiction under the previous statutes, have sometimes been designated as "quasi judges" or "legislative referees." Greely v. Thompson, 10 How. 225, 240, 13 L. Ed. 397; Rankin v. Hoyt, 4 How. 327, 11 L. Ed. 996. So, in like manner, the collector of customs is a special statutory officer or tribunal, invested with power to exercise certain specified statutory functions, some of which are purely ministerial and executive, while others are of a quasi judicial character. U. S. v. Leng (D. C.) 18 Fed. 15. The rule in reference to all statutory officers and tribunals of this character is well settled, and it is that, where they have jurisdiction over the subject-matter, their determination is conclusive, "except upon a review in such way as the law points out for the correction of errors"; but, as stated in U. S. v. Thurber (D. C.) 28 Fed. 56, per Brown, J.: "There is one fundamental exception to this rule: Not only must the officer have jurisdiction of the subject-matter, but he must also keep within the limits of power conferred by statute. Whenever a suit is brought, based upon such officer's action, it is always competent by way of defense to show that the officer has departed entirely from the statute, or acted so contrary to it that his acts are deemed beyond his jurisdiction, and in excess of power; and in such a case what he does in excess of power is illegal and void, and may be shown in defense. Void acts are thus wholly different in their consequences from merely erroneous acts. Mere errors or mistakes in the performance of a duty do not make the officer's acts void. They stand good and valid until reviewed and corrected as provided by law,"—citing U. S. v. Doherty (D. C.) 27 Fed. 730, 733, and cases cited. From the letter of the statute (section 13) it is apparent that the board of review could acquire jurisdiction to "examine and decide" these cases only in one of two ways: First, in the event of the importer or other owner of the merchandise giving notice of his dissatisfaction with the decision of the single general appraiser in the time and manner prescribed by said section 13; or, secondly, by the action of the collector in announcing in some suitable way

the fact that he "deemed the appraisement of the merchandise too low." And in both contingencies the collector is required to transmit the invoice and papers to the board of three general appraisers. The importers have expressed no such dissatisfaction, so that the jurisdiction of the board must turn upon the action of the collector.

The law makes the decision of the single general appraiser final and conclusive, unless the collector shall "deem the appraisement of the merchandise too low," acting upon which conclusion he is to transmit the invoice and accompanying papers to the board of three general appraisers. The words "shall deem," as used here, we construe to mean "shall think, judge, or hold an opinion, decide, or believe on consideration," which accords with the definition given by the lexicographers. The formation of this opinion or belief must necessarily involve the exercise of judgment and discretion by the collector, based on proper investigation, and entertained according to the rules of reason and justice. Without a compliance on the part of the collector with this requirement, the board of review would acquire no jurisdiction to decide the case, and any decision made by it would be null and void. It is, in other words, a condition precedent to the exercise of jurisdiction. The rule obtains that, "where the act or thing required by the statute is a condition precedent to the jurisdiction of the tribunal, compliance cannot be dispensed with"; and, furthermore, even if such compliance be impossible, the jurisdiction fails. End. Interp. St. p. 630, § 443. Nor can any consent of parties give jurisdiction, so that any statutory provision which goes to the jurisdiction does not admit of waiver. Cooley, Const. Lim. 493–506. It has accordingly been held that, where an act provided that justices, at the hearing of a bastardy proceeding, should "hear the evidence" of the mother, and such other evidence as she may adduce, the evidence of the mother was so essential to the jurisdiction of the tribunal that no order could lawfully be made without it, although the woman died before the hearing. Reg. v. Armitage, L. R. 7 Q. B. 773. The record here fails to show that the collector deemed the appraisement of the merchandise, as made by the single general appraiser, too low; and the testimony taken at the hearing shows beyond question that he did not deem it too low. It is in evidence that when the local appraiser at the port of New York suggested to the collector that he order a reappraisement of the goods by a board of three general appraisers the collector declined to adopt the suggestion. He expressed himself in a letter to the secretary of the treasury, under date of August 16, 1898, giving his reasons fully for the conclusions he had reached after due investigation. He officially reported to the secretary, after stating his reasons, as follows: "I am satisfied that the appraisements made by the general appraiser are not too low, although considerably less than those of the local appraiser; and I have no good reason that would justify the opinion on my part that the reappraisements as made are too low. Hence I am constrained to deny the request of the appraiser that I order a reappraisement on the 120-odd invoices by the board of three United States general appraisers, unless otherwise instructed by the department." The assistant secretary of the treasury then in charge of the customs division, in reply to this letter of the collector, under date of August 17, 1898, urged upon him the expediency of an appeal from the decision of the single general appraiser. After stating certain reasons, he concludes as follows: "The department has, therefore, to request that you make due application for a reappraisement by the board." It appears from the testimony that this letter was written after consultation with the solicitor of the treasury, and obtaining from him an opinion, verbally given, that "the secretary had the authority to request the collector to make an appeal in such case." The collector seems to have construed this request to be an order or instruction, from the fact that he made the following indorsement upon the papers: "In view of the department's order of August 7, 1898, I hereby order a reappraisement by the board of three general appraisers of the merchandise covered by this reappraisement." Subsequently, on October 7, 1898, the collector, after a personal conference with the assistant secretary of the treasury, made and signed the following indorsement upon the papers: "I hereby appeal from the decision of the general appraiser in this case, under the provisions and in accordance with section 13 of the act of June 10, 1890,

and transmit the invoice to the board of general appraisers for a reappraisement of the merchandise covered thereby." This form of indorsement was prepared by the assistant secretary. The collector, on being interrogated as to whether or not the treasury department had "insisted" upon a reappraisement being called for in these cases, or whether he had called for the reappraisements and had placed these two indorsements on the papers of his own volition, replied: "The assistant secretary did not say the department 'insisted,' but he said they 'desired' a reappraisement." It is not made to appear, however, that the collector had at any time expressed, either in writing or verbally, the opinion that he "deemed the appraisements too low." The latter indorsement does not necessarily convey any such impression, and the first seems to have been made on the theory that the department had instructed him to take the appeal. On the contrary, the collector at the hearing was emphatic in reiterating the truth of the statement which he had officially reported to the secretary on August 16, 1898, and asserted that he had not changed his mind from the opinion expressed in that letter.

We do not feel authorized, from the testimony and the record, to reach any other conclusion than that the collector did not "deem the appraisement of the merchandise too low," and that he reported no such conclusion to the board of review. The ambiguous phraseology of his second letter seems to have been adopted to avoid the recantation of the opinion on this subject which he had previously expressed to the secretary of the treasury, and as an act of obedience to what he regarded as an instruction from his superior officer, issued in the courteous form of a request. In this view of the case, the action of the collector could not be legally regarded as his voluntary act, but rather that of the secretary, who made the request. It was insisted at the argument, however, that the collector is a subordinate ministerial officer, subject to the control of the secretary of the treasury, who was authorized to give the instruction in question, and the collector was, consequently, bound to obey it. The statute under consideration, as we have said, makes the jurisdiction of the board of three general appraisers (or board of review) to depend upon the action of the collector, and not of the secretary, "unless," it says, "the collector shall deem the appraisement of the merchandise too low." There is no doubt of the fact that the secretary has the right to instruct collectors as to all administrative matters, where the collectors act in a ministerial or administrative capacity. But the rule is different as to duties which are judicial or quasi judicial in character, the performance of which is made 'by statute to depend upon the exercise of discretion or judgment on the part of the collector alone. It may be laid down as a proposition generally sustained by the authorities, as well as by reason, that: "Where a statutory power or jurisdiction is granted, which otherwise does not exist, whether to a court or an officer, and in all cases where, by the exercise of such a power, one may be devested of his property, the grant is strictly construed. The mode of proceeding prescribed must be strictly pursued. The provisions regulating the procedure are mandatory as to the essence of the thing required to be done." Suth. St. Const. p. 587, § 454; Potter, Dwar. St. 224. So, in the case of Allen v. Blunt, 3 Story, 742, 1 Fed. Cas. 448, cited in the brief of appellants' counsel, the principle is stated as follows: "In short, it may be laid down as a general rule that, where a particular authority is confided to a public officer, to be exercised by him in his discretion, upon an examination of the facts, of which he is made the appropriate judge, his decision upon these facts is, in the absence of any controlling provision, absolutely conclusive as to the existence of those facts." On this point it has been forcibly observed that "every statute that limits a thing to be done in a particular form, although it be done in the affirmative, includes in itself a negative, viz. that it shall not be done otherwise." Atkins v. Kinnan, 20 Wend. 241, 248, citing Plowd. Comm. 113. In the light of these principles, it is clear that no one but the collector can decide that he (the collector) deems the appraisement of any merchandise too low, unless there be some special statutory provision which would authorize the discretion or judgment of the collector to be controlled or dominated by the treasury department, or some other superior power. This authority is sought to be derived, in the first place, from the power conferred on the secretary of the treasury by section 249 of the

Revised Statutes, which empowers that officer to "direct the superintendence of the collection of the duties on imports and tonnage, as he shall judge best." Such a construction of that statute is put at rest by the decision of the supreme court in Butterworth v. Hoe, 112 U. S. 50, 5 Sup. Ct. 25, 28 L. Ed. 656. It was there held, after elaborate discussion, that an entirely analogous power of supervision and direction, given to the secretary of the interior over the commissioner of patents, who is for many purposes deemed a subordinate officer, conferred no authority upon the secretary to control the judgment and discretion of the commissioner as to any matter the right to decide which is vested in him by law. In other words, the executive supervision and direction of the department was held to apply to administrative and executive duties only, and not to matters in which the subordinate is directed by statute to act judicially or quasi judicially.

It is further argued on the part of the government that the authority of the treasury department to instruct collectors in this particular manner, if, in fact, there was such instruction, is derivable from either section 2949 or section 2652 of the Revised Statutes. These two statutes are condensations of sections 23 and 24, respectively, of the tariff act of August 30, 1842 (5 Stat. p. 548, at page 566). The former section authorizes the secretary of the treasury from time to time to "establish such rules and regulations, not inconsistent with the laws of the United States, to secure a just, faithful, and impartial appraisal of all merchandise imported into the United States," etc. Section 2652 provides that "it shall be the duty of all officers of the customs to execute and carry into effect all instructions of the secretary of the treasury relative to the execution of the revenue laws, and in case any difficulty shall arise as to the true construction or meaning of any part of the revenue laws, the decision of the secretary of the treasury shall be conclusive and binding upon all officers of the customs." There is no regulation which the secretary has promulgated, under the authority of said section 2949, so far as we can ascertain, which would be at all applicable to this case. The law requires that all such rules and regulations, with the reasons therefor, shall be reported by the secretary to the next session of congress; and we find no regulation which is pertinent to this subject. An instruction given to a single officer, and not promulgated in the form of a general rule applicable to all officers under like circumstances, could scarcely be characterized as a regulation in any proper sense of the word. Harvey Case, 3 Ct. Cl. 38, 42. So, said section 2652 relates to the execution of the revenue laws and matters of an executive character. It was not intended to confer any authority upon the department to control or interfere with the decision of any matter or question which the laws of congress expressly relegated to the judgment of any subordinate officer. These two sections were long ago construed by the United States circuit court in Tucker v. Kane, Taney, 146, 24 Fed. Cas. 268, decided in the year 1850. It was there held that these statutes did not confer upon the secretary the right to review the judgment of merchant appraisers, nor to exercise any control over their decisions, nor set aside any such decisions because they were believed by him (the secretary) to be against the weight of evidence. To a like effect is the principle laid down in Gray v. Lawrence, 3 Blatchf. 117, 10 Fed. Cas. 1031. There are many adjudged cases bearing on the relative authority of the secretary of the treasury and the collector which serve to illustrate the foregoing principles. For example, the various collectors of customs have long been invested with the authority to determine what allowance of goods may be made for reasonable sea stores of certain vessels. This estimate being authorized to be made "within the discretion" of these officers, it was uniformly held by the secretary of the treasury that the decision of the collector as to these matters was neither subject to review nor control by the department. Customs Regulations 1892, art. 107, and treasury decisions there cited. So it has been held that such decisions, being based upon the discretion and judgment of the collector himself, are not subject to review by the courts nor by this board. An Ullage Box of Sugar, 24 Fed. Cas. 504; In re Cunard Steamship Co., G. A. 4464. So, in a decision by the circuit court for the Northern district of California in Re Wise, 73 Fed. 183, a contention arose as to the proper construction of section 15 of the customs administrative act of June 10, 1890, which confers the right

of appealing from any decision of the board of general appraisers upon "the collector or the secretary of the treasury," when dissatisfied with such decision. The attorney general had given the treasury department an opinion that under the provisions of section 2652 of the Revised Statutes (to which reference has heretofore been made in this opinion) it was the duty of the collector to follow the instructions of the secretary in reference to the exercise of his authority to take such appeals. This opinion was placed upon the ground that a collector was a subordinate officer of the secretary of the treasury, and as such bound by his instructions relating to the revenue laws. 21 Op. Attys. Gen. 203. The circuit court held that, inasmuch as the statute itself conferred upon the collector the authority to take the appeal, and said nothing about obtaining authority from the secretary of the treasury, it was evident that no such authority was required. It would seem to follow logically that, if the secretary is debarred by law from controlling the judgment and discretion of a collector in the exercise of a statutory power which is given alternately to each of them, a fortiori, he could not legally control the decision of the collector as to the exercise of a power vested exclusively in him by statute, such as the power or authority to take an appeal in the case under consideration. A like principle is adduced from the various decisions of the courts bearing on the right conferred by statute upon the director of the mint to estimate quarterly the values of standard foreign coins in circulation among the various nations of the world. Such an authority involves the exercise of judgment and discretion, and has been held to reside alone in the director of the mint, where congress has placed it. It has accordingly been held by numerous court decisions that such findings of value by that officer are final and conclusive, and not subject to review, change, or control, either by the courts or by any other authority, except in the mode and at the time prescribed by law. U. S. v. Klingenberg, 153 U. S. 93, 14 Sup. Ct. 790, 38 L. Ed. 647; Wood v. U. S., 18 C. C. A. 553, 72 Fed. 254; United States v. J. Allston Newhall & Co. (C. C.) 91 Fed. 525. In De Forest v. Redfield, 4 Blatchf. 478, 7 Fed. Cas. 364, such an authority was denied by the court to exist either in the president or the secretary of the treasury, under the general power conferred to make proper regulations for estimating duties on imported merchandise.

In construing the statute under consideration, it is a matter of importance that we should not overlook the fact that the collector of customs has long been invested by law with the authority to direct reappraisement, either by the principal appraiser or by three merchant appraisers, under the old system. Rev. St. § 2929; Elmes, U. S. Laws Cust. 231 et seq. And in case of disagreement between two appraisers the collector was authorized to decide between them, and determine the dutiable value of such imported goods. Rev. St. § 2930. He was thus constituted by law pro hac vice an appraiser. This was done, no doubt, for the reason that he would always enjoy ample opportunities for informing himself as to the market value of imported merchandise through constant access to the invoices of merchants and the statements of reputable importers. It cannot be supposed that the secretary of the treasury, with his multifarious and arduous duties, would have either the time or opportunities required to make such investigations, there being more than 150 ports of entry in this country, where collectors or surveyors are stationed, and upon whom the exercise of this function is constantly devolved. Our inference, therefore, is that it was not the intent of congress to vest the secretary of the treasury with either the authority to order a reappraisement of merchandise of the kind here under consideration, or to control the collector in the exercise of the discretion conferred on him by statute as to this particular matter. The power to make such an order in one case would necessarily and logically involve the correlative power of compelling the collector, by instructions, to desist from making like orders whenever this course might be deemed advisable by the department. No such authority was claimed at the hearing, nor, in our judgment, has it any just foundation in law.

It follows from the foregoing conclusions that the board of three general appraisers, acting as a board of review, acquired no jurisdiction to hold the appraisements in question, and, being without jurisdiction, their decision advancing the values ascertained by the single general appraiser would be null

and void. In such case duties must necessarily be levied upon the basis of the values ascertained by the single general appraiser, which the law makes final and conclusive in the absence of a valid order for reappraisement under the provisions of said section 13.

Other objections are raised to the validity of the so-called "reappraisements" under consideration, which are as follows: (1) That the reappraisement made by the board of review was irregular and illegal, because, instead of finding the market value per unit of measurement, they advanced the invoices by making additions in the form of a percentage. (2) That the merchandise was not lawfully appraised under either section 10 or section 11 of the customs administrative act. (3) That the board of three general appraisers advanced the value of a portion of the goods without inspecting the goods themselves, or having proper samples of them. In the view we have already taken of this case, it becomes unnecessary to pass upon these contentions, as to the soundness of which many forcible objections, however, can be urged. Inasmuch as this decision involves many other similar protests not now submitted for consideration, and a large amount of the public revenue is at stake, and the principle involved is one of great importance, it is quite probable that the final determination of these difficult questions must lie with the courts. For this reason the other protests will be suspended, the present cases having been agreed on by counsel as fairly presenting the issues involved. Conflicting claims of jurisdiction are naturally at war on their boundary lines, and often result beneficially in obtaining constructions of laws which would not otherwise be interpreted by the courts. It is only by submitting such questions to the final arbitrament of the courts that friction can be avoided between superior and subordinate tribunals, as well as between the different departments of the federal and state governments. The protests are sustained so far as they raise the question of jurisdiction, and the collector's decision is reversed, with instructions to reliquidate the entries on the basis of values as ascertained by the single general appraiser.

Henry C. Platt, Asst. U. S. Dist. Atty.

W. Wickman Smith, for importers.

TOWNSEND, District Judge. In 1898, Messrs. Loeb & Schoenfeld imported certain embroideries, which were appraised by the local appraiser at a valuation considerably in advance of their invoice value. Under the provisions of section 13 of the customs administrative act of June 10, 1890, they applied for a reappraisement, and the general appraiser reduced the valuation. Thereafter, on August 20th, the collector transmitted the invoice and papers appertaining thereto to the board of three general appraisers, with an indorsement as follows:

"In view of the department's order of August 17, 1898, I hereby order a reappraisement by the board of three general appraisers of the merchandise covered by this reappraisement."

On October 7th he made a new indorsement as follows:

"I hereby appeal from the decision of the general appraiser in this case, and, under the provisions of and in accordance with section 13 of the act of June 10, 1890, transmit the invoices to the board of general appraisers for a reappraisement of the merchandise covered thereby."

This indorsement was pasted above the original one. To this reappraisal the importers objected, claiming that said board had no jurisdiction of the proceedings, because the collector did not deem the appraisement too low. Said board entertained jurisdiction, and examined and decided the cases, and the collector liquidated the entries in accordance with the valuation found by said board. The

importers thereupon protested under section 14 of said act, and the papers were duly transmitted to the board of three general appraisers acting as a board of classification. The question presented is whether said board of classification and this court have jurisdiction to review the action of the board of three general appraisers in reviewing the appraisement of the single general appraiser. The chief contention of the importers is based upon the following provision of section 13 of said customs administrative act:

"The decision of the appraiser * * * shall be final and conclusive as to the dutiable value of such merchandise, * * * unless the collector shall deem the appraisement of the merchandise too low," etc.

Counsel for the importers duly appeared before said reviewing board of three general appraisers, and asked that the testimony of the collector might be taken as to the question whether he in fact deemed said appraisal too low. The board replied that it was competent for the collector to change his opinion within a reasonable time, and declined to hear such testimony, stating that the record showed that the collector did deem said appraisement too low. At the hearing before the board of classification, however, said evidence and other evidence bearing upon the same question was received, from which it appeared that in the official correspondence between the collector of customs and the secretary of the treasury the collector wrote to the secretary of the treasury on August 16, 1898, as follows:

"I am satisfied that the appraisements made by the general appraiser are not too low, although considerably less than those of the local appraiser; and I have no good reason that would justify the opinion on my part that the reappraisements as made are too low. Hence I am constrained to deny the request of the appraiser that I order a reappraisement on the 120-odd invoices by the board of three United States general appraisers, unless otherwise instructed by the department."

The department replied as follows:

"The department has given due consideration to your letter of the 16th inst., in which you set forth the conclusions which you have reached in regard to the reappraisement cases covering Swiss embroideries. While due weight is given to the arguments you present against the expediency of an appeal from the decision of the general appraiser, the department believes that a proper adjudication of the questions involved requires the final verdict of the board of general appraisers. Much evidence has recently been obtained through the reports of Special Agent Whitehead, which has been transmitted to the board, and it is in a position to settle this vexatious matter equitably and finally. The department has, therefore, to request you that you make due application for reappraisement by the board."

The collector further testified before the board that the statement in said official letter that he did not consider the appraisement too low was true when he made it, and that he had not since changed his opinion.

The contention of the counsel for the government, inter alia, is that the secretary of the treasury has the authority to direct or request the collector to take an appeal from the appraisement of a general appraiser irrespective of the opinion of the collector; that the evidence that the collector did not deem the appraisement too low is incompetent and immaterial; that the board of general ap-

praisers on classification passed upon no question except that of jurisdiction; that the only question here is whether the board had or had not jurisdiction, there being no claim that the board of general appraisers on valuation did any illegal act, or made any error in their decision; and, further, that the action of the collector from which this appeal is taken is not a decision as to the rate and amount of duties under section 14 of said act, but is a mere computation, based upon the valuation made by the board of general appraisers. Counsel for the importers claim that it is a condition precedent to the right to review the appraisal of the single general appraiser that the collector shall deem the appraisement too low, that the secretary of the treasury has no power to direct the collector in regard to such appeals, and that said appeal was taken by the collector under the coercion of the secretary of the treasury. It is unnecessary to discuss all the contentions presented in the ingenious, forcible, and exhaustive argument of counsel for the government. If the evidence that the collector did not deem the appraisement too low is admissible, the decisive question is whether the secretary of the treasury had authority to direct the collector to take said appeal irrespective of his (the collector's) opinion. Counsel for the government, in support of his claim that said evidence was inadmissible, cited the following cases: Cornett v. Williams, 20 Wall. 226–249, 22 L. Ed. 254; McNitt v. Turner, 16 Wall. 366, 21 L. Ed. 341; Bank v. Dandridge, 12 Wheat. 70, 6 L. Ed. 552; Ward's Lessee v. Barrows, 2 Ohio St. 247. These cases only apply the settled maxim, "Omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium." When it is essential to the right of a public officer to act that a certain state of facts should exist, there is a presumption of the existence of such facts. But it is well settled that such presumptions may be rebutted by proof of lack of jurisdiction. Especially is this so in cases where the question arises as to the legal rights of importers. Greely v. Thompson, 10 How. 225, 13 L. Ed. 397; U. S. v. Passavant, 169 U. S. 16, 18 Sup. Ct. 219, 42 L. Ed. 644. The question here is not like that in Muser v. Magone, 155 U. S. 240, 15 Sup. Ct. 77, 39 L. Ed. 135, where the court stated that appraisers or other officers could not be interrogated as to their mental processes in making a decision on questions of value, provided they acted within their statutory powers, and without fraud. Nor is this a question between a superior and an inferior officer, in which the orders and regulations of the superior officer are binding upon his subordinate. In Oelbermann v. Merritt, 123 U. S. 356, 8 Sup. Ct. 157, 31 L. Ed. 164, the question arose whether a certain merchant appraiser was "familiar with the character and value of the goods" appraised, as provided by section 2930 of the Revised Statutes, and whether his incapacity could be proved by his own evidence. The court says:

"In regard to the question whether Mr. Bates was a competent witness to prove that he was not familiar with the character and value of silk velvets, we are of opinion that his evidence on that subject was admissible. As the question of his familiarity with the article and with its value necessarily depended upon the nature, and, to some degree, at least, upon the extent, of his experience in connection with the article, no one could know what that expe-

rience was so well as himself. If he is to be excluded as a witness on the subject, when offered by either side, the court and the jury and the parties would be deprived of the best testimony within reach. There is no ground of public policy which forbids that the merchant appraiser should be a witness to the extent above indicated. The brief of the solicitor general does not urge that the witness was not a competent witness to that extent."

The question, therefore, is whether the secretary of the treasury had the right to order the reappraisement. The word "deem," used in this connection, necessarily involves the exercise of discretion on the part of the collector. His calling and the nature of his business place him in a position where he is necessarily familiar with the value of imported merchandise, and with the facts bearing upon questions of appraisal. In such a determination he exercises his discretion judicially. "It is not consistent with the idea of judicial action that it should be subject to the direction of a superior in the sense in which that authority is conferred upon the head of an executive department in reference to his subordinates." Butterworth v. Hoe, 112 U. S. 50, 5 Sup. Ct. 25, 28 L. Ed. 656. The law as to ministerial functions, where nothing is left to the discretion of a person, and where he may be forced to perform a certain act, does not apply to the exercise of such judicial functions. Association v. Zumstein, 15 C. C. A. 153, 67 Fed. 1000. It may be true, as urged by counsel for the government, that there is a defect in the tariff laws, in that the secretary of the treasury has not been specifically empowered to order a reappraisement in such cases, as he is alternatively empowered to do under section 15, where he is dissatisfied with the decision of the board of general appraisers on classification; but this is not a matter to be remedied by judicial legislation. The decision of the board of classification sustaining the protests is affirmed.