BRUHL BROS. & CO. v. WILSON, Collector, et al.

(Circuit Court, D. Rhode Island.　June 30, 1903.)

No. 2,641.

**1. CUSTOMS DUTIES—COLLECTOR AS CUSTODIAN OF GOODS—RIGHT TO REMOVE FROM DISTRICT.**

The collector at the port of entry of imported goods is made by law the custodian of such goods until the payment of the duties thereon, and his duty as such custodian is to be performed within his own district.　His duties are prescribed by statute, and an order from the Treasury Department instructing him to send or remove the goods out of his district, "for submission to trade experts," is without legal authority, and will not justify a removal of the goods from the collector's district.　The importer, having the right to a speedy appraisal by the officers designated by law and to withdraw the goods on payment of the duties, has a substantial right to have them remain in the custody of the collector at the port of entry, and may invoke the power of the courts by injunction to prevent their removal.

In Equity.　On motion for preliminary injunction.

Comstock & Gardner, for complainants.

Chas. A. Wilson, U. S. Dist. Atty., for defendants.

BROWN, District Judge.　The complainants seek a preliminary injunction to restrain the collector of the port of Providence from removing to New York an importation of diamonds of the value of about $6,000.　The diamonds were landed at the port of New York, and in accordance with the statute were forwarded to Providence as the port of destination, and were received by the collector of the port of Providence at said port on June 9, 1903.　The estimated duty based upon the importers' invoice was paid, but no appraisal of the diamonds at the port of Providence has yet been made.　On June 9th the collector received from the Treasury Department a telegram directing him to send the diamonds "with Special Agent Smith to New York for submission to trade experts; hold goods until further advised," signed "B. B. Armstrong, Assistant Secretary."　The collector telegraphed the department for further instructions, and on June 11th received the following reply, signed by the assistant secretary: "Your representative with precious stones should accompany Agent Hentz to New York."　The collector testified that he understood that these telegrams directed him to send all the diamonds out of his district by his special representative, accompanied by a special agent of the Treasury Department, and that he was about to do so; also that upon these instructions the appraisal at this port was deferred until after the return of the diamonds from New York. Upon the testimony it is clear that the collector was about to act upon the instructions of the department, and by his representative to remove the goods to New York because of these instructions, and not because he had examined the goods, and found himself unable to make a proper valuation thereof, or because he found himself unable to procure at Providence all evidence or assistance necessary in making an appraisal.　The United States attorney, who ap-

pears for the collector, relies upon section 10, c. 407, Act Cong. June 10, 1890, 26 Stat. 136, 1 Supp. Rev. St. 749 [U. S. Comp. St. 1901, p. 1922]:

"That it shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector, as the case may be, by all reasonable ways and means in his or their power to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported."

This statute, however, relates to the duties of appraisers, and confers upon the appraisers no rights of custody. The custody of these goods is by statute intrusted to the collector of the port. The duties of the collector as custodian are distinct from his duties as appraiser. In some ports the appraiser is an independent officer; in others, as in the port of Providence, the collector performs the duties of appraiser. Where the appraiser is a distinct officer, he has apparently no right, as appraiser, to remove the goods from the custody of the collector, or from the district. I am, therefore, of the opinion that the section quoted, which relates to the duties of appraising officers, has no relevancy to the present question of the legal custody of the goods. If the duties of the collector, as custodian of dutiable goods, are prescribed by statute, the Secretary of the Treasury has no authority to alter or amend the statute. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267. A direction to a collector to send goods by a special agent of the Treasury Department to New York would amount to a direction to an officer appointed by statute as the custodian to surrender his custody to a person unauthorized by statute to receive custody. A direction to a collector to send goods in his custody by his representative to New York amounts to a direction to the collector to perform his duties as custodian outside of his district. So far as I am able to discover, there is no authority to direct a collector to perform his duties as custodian outside of his collection district. If such authority existed in the Treasury Department, it would amount to an authority to remove the local boundaries established by Congress. Upon such examination of the statutes as I have been able to make, it appears to be the plain intent of Congress that the duties of collectors and of appraisers are to be performed within their districts; that the goods are to be held in custody within the district of the collector of the port of entry; and that they are not to be transported from place to place at the will of the collector or of the Treasury Department. No authority has been presented which has any tendency to show that a collector can be called upon to perform his duties as custodian outside of his district, and in a remote district, upon instructions from the Treasury Department. The only case cited by counsel in which the exact point was discussed is Goodsell v. Briggs, in the Circuit Court of the United States for the First Circuit, 1 Holmes, 299, 302, 303, Fed. Cas. No. 5,548, in which Judge Lowell said:

"If the case were made out that the defendants were about to remove a large and valuable part of the complainants' goods to New York, they would

be acting beyond their jurisdiction, and I do not know that I should not feel bound to restrain them." Also: "I assume that the Circuit Court will never interfere with the ordinary action of the administration of the customs laws by the proper officers, and have no jurisdiction to do so. I assume, further, that, if the officers do an act which is beyond their jurisdiction, and is a mere usurpation, the court may interfere by injunction, if the case seems to require it."

In United States v. Adams (C. C.) 24 Fed. 348, it appeared that by an order from the Treasury Department the collector for the District of Oregon was directed to transfer money by carrying the same to San Francisco. While acting under this order, a large amount of money was lost. The court held that it was not within the scope of the collector's duties to transfer such moneys beyond his district, and that in making such transfer he was acting not as collector of the district, but as a private carrier of the government.

The case presented upon this petition for a preliminary injunction is, therefore, in substance, that the collector of the port of Providence, without legal authority, is about to transport goods out of the collection district at which they were entered to New York. The importers, as the owners of the goods, have a right to object to all acts of dominion over them not authorized by law. Their objection to an unauthorized control over their goods is substantial. The goods are of large value, and there is force in the objection that the owners should not be subjected to the risk of loss while in an unauthorized custody. They are, moreover, entitled to a speedy appraisal of the goods at the port of Providence, and to their speedy delivery upon the payment of the duties. That they are entitled to insist that the goods remain in the statutory custody would seem to follow from the fact that under the statute they have the right of withdrawal, and the absence of the goods from the district would be inconsistent with the exercise of this right.

It has been argued by counsel for the collector that it is not designed to take from the proper customs officer at the port of entry the lawful duty of appraising the merchandise, but that, if investigation by submission to trade experts in New York is enjoined by the courts, the department will be practically powerless to prevent undervaluation, and to require uniformity in the assessment of customs duties. It is by no means apparent that the assumption of fact upon which this argument is based is sound. Providence is an important center for the manufacture of jewelry, and an appropriate port for the entry of precious stones. It is hardly credible that proper appraisals cannot be made in this port. There is no evidence before me to show that this is the case. Yet, were it the case, such an argument is beside the point. Uniformity in assessments might result if all goods were required to be entered at a single port of the United States, and to be submitted to the same body of appraisers; but such is not the law. The system established by Congress cannot be altered by order of the Treasury Department because of supposed defects in its practical workings.

It is unnecessary, in this opinion on the petition for a preliminary injunction, to cite the various provisions of the customs statutes which apparently confide the custody of the goods to the collector,

.and seem inconsistent with the right of the collector to remove goods from his district. Upon the brief for the collector it is conceded that the official custodian of this property is the collector. Article 1600 of the customs regulations (1899) seems to recognize that the collector's duties as custodian are prescribed by law:

"He holds possession of all imported merchandise upon which, duties have not been paid or secured to be paid, disposing of the same according to law."

Article 1270, relating to reappraisement, seems to recognize the importer's right to have the goods appraised at the port of entry:

"Should the importer so elect, his case may be disposed of at the New York office of the general appraisers, provided he waives the right to have the reappraisement held at the port of entry, and stipulates that the result of the reappraisement will not be contested on account of the absence of the merchandise from the office of the reappraisement. Such waiver must be in writing, and shall accompany the appeal for reappraisement; and at the same time good and sufficient samples must be forwarded when the market value of the merchandise per se is in question."

It is contended that, for the purpose of enabling the collector to perform properly the duty of appraisal, his jurisdiction is that of the sovereign power itself, whenever necessary for the due execution of the law; that to circumscribe this power by the lines of the collection districts is to open the door to fraud in the undervaluation of many species of property, particularly that kind of property denominated "precious stones." This argument seems not only novel and extraordinary, but unsound. The duties of a collector as custodian are apparently the same when he is not appraiser as when he is appraiser. It is impossible to interpret the statutes so as to restrict collectors who are not appraisers to their collection districts, and to impose upon collectors who are appraisers the obligation to perform their duties anywhere within the jurisdiction of the United States. The construction of the statutes as to the duties of collectors must be uniform. No argument has been advanced to show why a collector who is not an appraiser should·be required to perform his duties as custodian outside of his district; and the view that the public interest requires that the Treasury Department should have authority to direct the transportation of imported goods from district to district seems contrary to the view of Congress. Furthermore, by section 2 of the act of June 10, 1880, c. 190, 21 Stat. 173 [U. S. Comp. St. 1901, p. 1964], relating.to immediate transportation of dutiable goods, it is expressly provided that the appraisement shall be had at the port of destination, and that the merchandise "shall not be subject to. appraisement and liquidation of duties at the port of first arrival." If, after goods have been forwarded to a port having the privilege of immediate transportation, and placed in the custody of the collector of that port, the Treasury Department can at once order the return of the goods to the port of first arrival for "submission to trade experts" at that place, it would seem to follow that the Treasury Department has the power of practically repealing the provisions of the statute providing for immediate transportation. If the removal of goods and submission to trade experts in New York were to be regarded as connected with the duty of appraisal by the

collector of this port, there would still remain a serious question as to whether a direction by the Treasury Department to the appraising officer requiring him to be governed or guided by the testimony of designated experts, to be taken either within or without his district, could be regarded as a legal measure for preventing undervaluation and requiring uniformity in the assessment of customs duties.

Authorities are cited by the complainants to the effect that the duties of the appraisers are quasi judicial, to be performed in compliance with the directions of the statutes, which give to them a discretion which is not subject to control by the department. Gray v. Lawrence, 3 Blatchf. 117, Fed. Cas. No. 5,722; Greely v. Thompson, 10 How. 225, 240, 13 L. Ed. 397; U. S. v. Loeb (C. C.) 99 Fed. 723; Butterworth v. Hoe, 112 U. S. 50, 67, 5 Sup. Ct. 25, 28 L. Ed. 656. It is unnecessary, however, to determine this question upon the present application. It is sufficient to say that the removal of the goods out of the district is, so far as has been made to appear, without legal authority, and that the importers have substantial grounds for objecting thereto.

A decree for a preliminary injunction may be entered.