[456] BENNET H. MARTIN vs. WILLIAM HARRISON — Writ of Error from Red River County.

The representatives of a deceased joint mortgagor should not be joined with the survivor in a suit brought to foreclose the mortgage in the district court. [23 Tex. 486.]

The mortgagee should pursue his remedy against the representatives of the deceased mortgagor in the probate court; while the remedy against the surviving mortgagor would be by a suit to foreclose the mortgage, so far as his interest was concerned, in the district court.

The decree of foreclosure in a suit brought against one joint mortgagor, the other being dead, should only direct a sale of the interest of the party sued in the mortgaged property.

Case stated in the opinion of the court.
*Martin* and *Epperson*, for plaintiff in error.
*Burroughs* and *Morrill*, for defendant in error.

Mr. Justice LIPSCOMB delivered the opinion of the court.
The defendant in error, Harrison, filed his petition stating

that one Montgomery, and Martin, the plaintiff in error, were indebted to him one thousand seven hundred and sixteen dollars and fifty-three cents, by their joint and several promises, which they promised to pay him, Harrison, on the 7th day of February, 1846, with interest, which sum and interest is unpaid and due. That to secure the payment of the money, the said Martin and Montgomery made a mortgage deed of certain lots of land in Clarksville, which mortgage [457] is appended to and made a part of the petition. The prayer of the petition is for process, that the mortgage may be foreclosed, and for judgment for the money promised to be paid and due, with interest at ten per cent. from the 7th day of February, 1846, until paid. The promissory note for the money, corresponding with the debt claimed in the petition, appears from the record to have been filed, and the mortgage is appended and set out.

Process issued against both of the defendants, but was served only on Martin, and returned not found as to the other. Montgomery had died before the return, as appears from the suggestion of his death on the record. At the return term the plaintiff discontinued as to Montgomery's representatives. Martin filed a general demurrer and a general denial of the allegations contained in his petition.

He afterwards withdrew his answer of a general denial of the facts, and rested his defense on the law of the case under his demurrer. The court gave judgment for the plaintiff on the demurrer against Martin, for the debt, interest and cost, and further decreed a sale of the mortgaged premises.

The plaintiff in error assigns for error the rendering this judgment and decree, without making the representatives of Montgomery parties. In support of this assignment he relies on the practice of the courts of chancery in bringing all the parties in interest before the court, before a final decree. That this is the rule in those courts cannot be doubted. 2 Madd. 4th American ed. 171, 172. It must, however, be borne in mind that we have a system of practice of our own, that is neither founded on common law nor chancery precedents. It is, however, under our practice, the privilege of all who may

be interested in the decree to be made parties, on application so to be made. We so ruled in Legg v. McNeill and Boyce, at this term, *ante*, 428. If the rights of the representatives of Montgomery could be affected by the decree, they ought unquestionably to have an opportunity in some form to be heard, and permitted to [458] make opposition if disposed to do so. It is not perceived, though, that they could have been implicated in any manner by the decree, after the discontinuance against them, and going to a trial without them. If the proceeding was purely a proceeding *in rem*, that is, against the property mortgaged, we have no doubt that the discontinuance would have been wrong on general principles. But a proceeding to foreclose a mortgage under our statute is not strictly a proceeding *in rem*, but a judgment is sought for the debt secured by the mortgage, as well as a decree for a sale of the property mortgaged. If there was no other obstacle in the way, we should have no doubt that under our practice, in a proceeding to foreclose a mortgage, under the circumstances of the case, that the legal representatives of Montgomery could have been and ought to have been made parties. It is believed, however, that by our probate law, insurmountable obstacles are interposed to the prosecution of the suit jointly against the living mortgagor and the representatives of the deceased one, and if so, whatever the repugnance chancery rules may interpose, to a decree of sale of the interest of one of the mortgagors, until the other should be brought into court, and in a condition to be embraced in the same decree, must give way to express legislation. The probate court can claim no control or jurisdiction against the living mortgagor, whilst it claims a right exclusively to regulate the proceedings, with the exceptions provided for by the statute, affecting the estate of the deceased one. It will be found in the 22d section of the act to organize the probate courts, p. 316, acts of 1846, that in directing the order in which the debts against the estate shall be paid, that an express provision is made for the payment of "recorded mortgages and liens on specific property, then judgments of the courts of this state, the oldest first." It would seem that not only is jurisdiction given over

the mortgaged property, but that judgments also have to be paid and satisfied, not by a *fi. fa.* from the courts where such judgments were obtained, but by the application [**459**] of the assets under the order of the probate court. The 17th section of the act provides in what way an order of sale shall be obtained, when it becomes necessary to the payment of debts. The 18th section prohibits the issuing an order of sale for the payment of debts, before the fourth regular term of the court, after granting letters of administration. The construction of the act regulating probate courts and successions of 1840 was given in relation to mortgages, by this court in the case of Graham v. Vining (at this term, *ante*, 433). The two acts are in many respects essentially different, but on the subject under consideration, the last act is believed to be substantially the same, and the opinion of the court in that case is referred to. Under the probate law, it would seem that a severance of the remedy to be pursued against the living and the deceased mortgagor would necessarily result from the death of one of them, because, as we have seen, had there been a judgment, there could have been no sale under a *fi. fa.* of the deceased mortgagor's interest in the mortgaged property. If so, there could have been no reason for joining the representatives of the deceased with the living mortgagor, as the interest of the latter could only be sold under a *fi. fa.* or decree of the district court, and the probate court had nothing to do in it. The severance then necessarily resulting from the law, there was no error in prosecuting the suit against the survivor to the full extent of his indebtedness, and to obtain satisfaction from the mortgaged property, to the extent of such survivor's interest in the property mortgaged. But the decree has gone further: after rendering judgment against the survivor for the debt, for which he was clearly liable, because the undertaking was joint and several, the court proceeded to decree a sale of the mortgaged property, not limiting the sale to such interest as the defendant, against whom the judgment had been obtained, had in the mortgaged premises. It was surely not competent for the court to decree a sale of the interest of the deceased, no judgment being had against him, nor [**460**] against his

legal representatives. In the decree of sale there was error, not to the injury of the plaintiff in error, because by this decree the sale was ordered of the whole property mortgaged, in satisfaction of a debt that had been established against him only. But the judgment being before us, it is competent for us to correct it, and render it as the court below should have done, decreeing the sale of the interest of the defendant only in the property mortgaged.

Judgment accordingly at the cost of the plaintiff in error.

---

STERLING SMITH VS. ABSALOM SHERWOOD — Appeal from Bowie County.

A party defendant cannot at the trial avail himself of an affirmative matter of defense which he has not alleged or set out in his pleading. [4 Tex. 69.]

An offer to deliver, and a refusal to receive, is a sufficient compliance with a promise to deliver specific goods. After such offer and refusal, the parties stand to each other in the relation of bailor and bailee.

In cases of civil injury or breach of contract, in which there is no element of fraud, willful negligence or malice, the measure of damage is simple compensation for the actual loss sustained. In money demands, the compensation embraces not only the original amount due, but interest for its detention and costs of the suit brought for its recovery. [5 Tex. 141; 6 Tex. 266; 9 Tex. 358; 18 Tex. 228; 27 Tex. 620.]

In cases of trespass or tort accompanied by oppression, fraud, malice or negligence so gross as to raise a presumption of malice, the jury have a discretion to award exemplary or vindictive damages by way of punishment to the wrongdoer.

This suit was instituted by Sherwood, the appellee, against Smith, the appellant, for the tortious taking and conversion of one hundred and twenty bushels of corn which [461] the former alleged the latter had sold and delivered to him. The answer contains a general denial and a plea of set-off. It appears from the statement of facts that the plaintiff below had exchanged corn with the defendant; that the latter had delivered the corn sued for to the plaintiff, who by the permission of the defendant had put it in a pen by itself, the defendant consenting that it should remain on the premises until the