Mr. Justice SWAYNÍ1
 

 delivered the opinion of the court.
 

 There was no error in admitting in evidence the two depositions of H. IT. Williams. The objections that he-was a party to the record, and interested in the event of- the suit,
 
 *244
 
 were obviated by the third section of the act of July 2d, 1864.
 
 *
 
 He was thus placed upon a footing of equality with all other witnésses, and it was competent for him to testify in the case orally or by deposition. The depositions were taken and certifiecl-in conformity tcr-the thirtieth section of the act of 1789.
 
 †
 
 If the deponent was not satisfied with his first deposition, he had the right to give a second one. No order.of the court was necessary in either case. The only objections insisted upon are that the statute does not authorize a party to' testify by deposition if he can orally, and that if he can by deposition, the right was exhausted by the first one, and that the second one was taken without authority of A&W. Both objections are without foundation. The statute is remedial and to be construed liberally. We are aware of no case in which it has been held that where a witness has given one deposition in an action at law, he'cannot for that reason give another without the sanction of the court. Such a proposition ha3 the support of neither principle nor authority.
 

 The instruction given to the jury touching the trust deeds executed by W. H. and J. H. Williams to Wildbahn, the notes they were given to seedre, and the sale by Cornett of the slaves, which was in part the consideration of the notes, was well warranted by the state of the evidence and was' correct. It was ^objected to only upon the ground that the evidence did not tend to prove that the slaves were removed from Missouri to Texas for the purpose of selling them in the latter State, and that hence the instruction, even if correct'as matter of law, was, with reference to the case, an' abstraction, and must necessarily have had the effect of confusing and misleading the.minds of the jury. An examination of the record has satisfied us-that the evidence was abundantly suffiei'ent to raise the question of intent in the removal of the slaves, and to make it the duty of the court to say to the jury what was said upon the subject. It is not objected that the rule of law was not. correctly stated.
 

 
 *245
 
 What was done in the suit between Cornett and
 
 J.
 
 H. and W. II. Williams in no wise affected the rights of H. ’ H. Williams in this, action,. The marshal seized the premises, and Cornett gave a replevin bond pursuant to the statute of Texas.. While the' property was in the hands- Of the marshal it was in the custody of the law. When Cornett gav" the bond the premises passed from the custody of the law into his possession, and they were in his possession when this suit wag instituted. The bond was. given to enable him to effect that result, and it was accomplished. The bond took the place of the property and represented it. The premises were as much in his possession as if no litigation was. pending and he had acquired possession in so.me other-way. The defendant in error, having declined to becorne a party to that suit, everything done in It was, so far as he was concerned,
 
 'res inter alios acta.
 

 The secondary proof of the judgmentin favor of H. H.Williams, against Samuel M. Williams, was properly admitted. The original record was destroyed by fire in the year 1862. The proof in question consisted of a copy of a copy of-the judgment, the latter duly certified by the clerk of the court by whom the judgment was rendered. .It was proved That the certified copy had been destroyed. The judgment in question was recovered upon a prior judgment in' favor of the same plaintiff against the same defendant. There was evidence tending to show thát a certified copy* of the latter existed, but it was not positive. There, was no proof of the-existence of such a copy of the j udgment sought to' be proved; There was a discrepancy as to a single word-in the copy offered in evidence. It set forth that the clerk had assessed the damages at “ forty-three thousand nine hundred and sixty-six dollars and thirty-four cents, and that it was, therefore, considered by the court that the plaintiff’ recover of the defendant the sum of forty-three thousand nine hundred and
 
 thirty-six
 
 dollars and thirty-four cents,” &c. It was satisfactorily proved
 
 aliunde
 
 that thirty, instead of
 
 sixtyr
 
 was correct, the latter being a mistake of the copyist.
 

 
 *246
 
 The principle established by this court as to secondary evidence in cases like this is, that it must be the best the party has it in his power to produce. The rule is to be so applied as to promote the ends of justice aud guard against fraud, surprise, and imposition.
 
 *
 
 The copy here in question was properly admitted.
 
 †
 
 This court has not yet gone the length ot the English adjudications, which hold, without qualification, that there are no degrees in secondary evidence.
 
 ‡
 

 The act of Congress of March 3d, 1871,
 
 §
 
 provides for putting in a permanent form proof of the contents of judicial records lost'or destroyed, such proof to take the place of the original records for all purposes. The statute of Texas upon the subject of proof in cases of lost records,
 
 ||
 
 has also been referred to in this connection. There is nothing in either the act.of Congress or the statute in conflict with the action of the court we have been considering.
 

 The most important question in the case relates to the proceedings of the County Court of Galveston County; touching the sale and conveyance of the premises in controversy by the administrator of Samuel M. Williams to H. H. Williams. The plaintiffs in error insist that those proceedings were
 
 coram nonjudice
 
 and void. The defendant in error maintains that they were regular and valid, and that if there be any error or defect, the court having had jurisdiction, its proceedings could not be collaterally assailed upon the trial of this cause in the court below. This renders it necessary to examine the ease in this aspect. The record shows the following facts: On the 28th of June, 1850, H. H. Williams-recovered in the District Court of the United States held at Galveston, against Samuel M. Williams, then living, a judgment for $26,736. And on the 12th of July, 1858, another
 
 *247
 
 judgment for the sum of $43,936.34. The second judgment was founded upon the first one, and was for the- principal and interest due upon the latter. At the January Term, 1866, of the Calves ton County Court, H. H. Williams, by his counsel, applied for an order that the administrator of Samuel M. Williams be cited to appear and show cause why “ he should not make application to the court for an order to sell enough of the property of said estate to pay. a judgment obtained by the said Henry Williams against the said Samuel M. Williams, to the amount of $40,000; which said judgment was allowed and approved as a valid claim against said estate, in October, 1859, with eight per cent, interest per annum,” &c.
 

 The administrator appeared at the same term, and answered that the plaintiff'recovered the judgment first hereinbefore mentioned; that it w'as presented for allowance against the estate with the usual, affidavit and allowed; that he could not say whether it was approved by the chief justice of Galveston County; that it had never been paid, and that the reason he had taken no measures to pay it was that the plaintiff had told him that, being against his brother, he did not intend to enforce it. The court thereupon, at the. same term, made an order as follows:
 

 “ On this day came - on to be heard in this cause the motion of Henry Williams, by his agent, J. H, Williams, asking that the administrator be required to sell sufficient property of the estate to pay a certain judgment obtained by the said Henry in the United Stateg District Court, on the 28th day of June, A.D. 1850, for the sum of twenty-six thousand seven hundred and thirty-six dollars, with interest from date of rendition; and it appearing to the court
 
 that this claim has. been duly allow.ed,
 
 .and that the administrator has no funds in hand whatever to pay the same, it is ordered that he make sale of sufficient property in pursuance of the prayer of the motion, And the administrator having designated the following piece of property, it is ordered that he shall make public sale of-one. league of land, situated,” &c. .
 

 The premises .-.in controversy • were then described, the
 
 *248
 
 mode and time of advertising,, and the place ,and terms of the sale were.pfescribed, and the administrator was directed “to make due report of his action in the premises to the court.” On the 15th of March, 1866, the administrator reported that, pursuant to the order' óf the court, after due notice according to law, he had offered the premises for sale at public áuctio.n, at the time and place required by law, and that they were struck off and sold to Henry H. Williams, for the sum of $60,000, on a credit of twelve months, secured by a vendor’s lien ; that'Williams was the highest and best bidder, and that the price was a reasonable one.
 

 At the March Term the court confirmed the report and ordered the administrator to make a deed to the purchaser, upon his complying with the terms of the sale. On the ,15th of April, 1866, the'administrator gave a receipt to the purchaser for $60,600, being the amount of the purchase-money with ten per cent; interest, and by the same instrument released his vendor’s .lien. On the same day the administrator executed a deed of conveyance to the said H. H. Williams; It recites all the proceedings touching the sale upon which it was founded.
 

 On the 2d of January, 1868, the administrator executed to Henry Williams another deed for the same premises. It recites more fully the proceedings relative-to the sale, and sets out that there were certain clerical errors of dates in the former deed, and that this deed was made to correct, them.
 

 The titles adverse to the plaintiff, developed upon the trial in the-court below, were all derived from heirs-at-law of Samuel Williams. The premises were liable under a paramount lien for the debts of the ancestor.
 
 *
 
 The plaintiff’s claim was of that character. Hence, if the sale and conveyance to him by'the administrator were valid, they were conclusive in his favor. He could recover, however, only upon the strength of his own title. The weakness of the title of his adversaries could not avail him.
 

 
 *249
 
 Most of the objections to the sale by the administrator taken iii the brief of the plaintiffs in error, were not insisted upon in the argument at the bar, and are of such a character as to require no ■ observations from the court. One .was pressed upon our attention with earnestness and ability, and to that one our remarks will be confined.
 

 A statute-of Texas requires all claims.'against the estate of a decedent to be presented to his legal .representative'áud to be
 
 allowed
 
 by such representative, and to be
 
 approved
 
 by the probate judge. ’ Until so
 
 allowed
 
 and
 
 approved
 
 they have no legal validity and cannot be recognized as debts against -the estate. If'disallowed, or not approved, they must'be sued upon within three months. If sued without a refusal to allow or approve, there can be no recovery." The absence of such fact is fatal to the action.
 
 *
 

 The order of sale sets forth that the claim had been allowed by the administrator, but is silent as to its approval by the judge. The plaintiffs'in error argued that this omission rendered the order a nullity.
 

 The application of .the judgment-creditor and the answer of the administrator gave the judge jurisdiction over the parties and the real estate of the deceased.
 
 †
 
 Jurisdiction is the power to hear and determine. To- make the order of sale required the exercise of this power. It was the business and duty of the court to ascertain and decide whether the facts were such as called for that action. The question always arises in such proceedings — -and must be determined —whether, upon the case as presented, affirmative or negative action is proper. The power to review and reverse the -.decision, so made is clearly appellate in its character, and can be exercised only by an appellate tribunal in a proceeding had directly for that purpose.. It cannot and ought not to be done by another court, in another case, where the subject is presented incidentally, and a reversal sought in such collateral, proceeding. The settled rule of law is 'that juris
 
 *250
 
 diction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud. Every intendment is made to support the proceeding. It is regarded as if it were regular in all things and irreversible for error. In the absence of fraud no question can be collaterally entertained as to anything lying within the jurisdictional sphere of the original case. Infinite confusion and mischiefs would ensue if the rule were otherwise. These remarks apply to-the order of sale here in question. The County Court had the power to make it and did make it. It is presumed to have been properly made, and the question of its propriety was not open to examination upon the trial in the Circuit Court. These propositions are sustained by a long and unbroken line of adjudications .in this court. The last one was the case of
 
 McNitt
 
 v.
 
 Turner.
 

 *
 

 They are not in conflict with the adjudications of Texas upon the subject.
 

 The statute of Texas does not require the evidence upon which the judgment of the court proceeded to be set forth in the record. Such a statement can do no good, and its omission does no harm.
 

 As regards public officers, “ act's done which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.”
 
 †
 
 “ Facts presumed are as effectually established as facts proved, where no presumption is allowed.” In the case of
 
 Ward’s Léssee
 
 v.
 
 Barrows,
 

 ‡
 

 a sale for taxes came under examination. It was held that certain acts of the county auditor were presumptive proofs that he -had administered to the collector the oath prescribed by law touching the delinquent list. The sale was sustained.- Here the judge who made the order of sale was the judge to approve the claim. The order was presumptive proof of the requisite approval. Such approval was necessarily implied, and what is implied in a record,
 
 *251
 
 pleading, will, deed, or contract, is .as effectual as what is expressed.
 
 *
 

 The proceedings touching the sale were properly admitted in evidence, and the instruction given to the jury upon the subject was correct.
 

 The last assignment of error relates to fraud'in obtaining the order of sale.
 

 It seems to us that the evidence disclosed in the record was hardly sufficient to raise any question upon that subject. However that may be, the instruction given to the jury was unexceptionable, and the plaintiffs in error have no right to complain.
 

 Judgment affirmed.
 

 *
 

 13 Stat. at Large, 351.
 

 †
 

 1 Id. 89.
 

 *
 

 Renner
 
 v.
 
 The Bank of Columbia, 9 Wheaton, 597; 1 Greenleaf on Evidence, § 84 and note.
 

 †
 

 Winn
 
 v.
 
 Patterson, 9 Peters, 676.
 

 ‡
 

 Doe
 
 d.
 
 Gilbert
 
 v.
 
 Ross, 7 Meeson & Welsby, 106.
 

 §
 

 .16 Stat. at Large, 474, ch. exi.
 

 ||
 

 Paschal’s Digest, Article 4969.
 

 *
 

 Paschal's Digest, Article 1373.
 

 *
 

 Paschal’s Digest, Article 1309, 1311; Danzey v. Swinney, 7 Texas, 625; Martin
 
 v.
 
 Harrison, 2 Texas, 456.
 

 †
 

 Paschal’s Digest, Article 1305.
 

 *
 

 16 Wallace, 366.
 

 †
 

 Bank of the United States
 
 v.
 
 Dandridge, 12 Wheaton, 70.
 

 ‡
 

 2 Ohlo State, 247
 

 *
 

 United States
 
 v.
 
 Babbit, 1 Black, 61.