### ELISHA M. FLACK ET AL. V. MARY E. BREMEN ET AL.

Decided March 13, 1907.

**1.—Unknown Heirs—Citation by Publication in 1843.**

Although there was no statute in 1843 which expressly authorized cita-
tion of unknown heirs by publication, still it would not be unreasonable to
hold, from the very necessity of the case in that early day, that the courts
had the inherent right to adopt such kind of notice, and to render judgment
thereon which would be good, at least, against collateral attack.

**2.—Foreclosure of Mortgage in 1843—Parties.**

The heirs of an intestate were not necessary parties in 1843 to a suit to
foreclose a mortgage upon land of the estate. The administrator of the estate
was the only necessary party.

**3.—Citation—Presumpton of Regularity.**

Where, in a suit against the administrator and the heirs to foreclose a
mortgage against land of an estate, the petition alleged that the administrator
resided in the county of the suit and that the heirs were unknown, and prayed
that the administrator "be cited to appear and answer and that notice be given
according to law to the other defendants," it will be presumed, as against a
collateral attack and in the absence of anything in the record to contradict
the presumption, that the administrator was regularly cited, and this, although
the judgment contained no recitals of service.

**4.—Mortgage for Purchase Money—Presumption.**

Circumstantial evidence considered, and held sufficient to support the pre-
sumption that a mortgage executed by a vendee to his vendor simultaneously
with the deed from the vendor to the vendee and upon the same land, was
given to secure the purchase money thereof.

**5.—Unauthorized Judgment and Sale—Estoppel.**

Although, under the law of 1840, a suit in the District Court by a vendor,
in whom was vested the superior title, against the administrator of his vendee,
for the purchase money of land and a foreclosure of the vendor's lien thereon,
was unauthorized because of the pending administration in the Probate Court
upon the estate of the vendee, still, the vendor having resorted to the District
Court and having received the benefits of a judgment and a sale of the land
thereunder, would be estopped to deny the title of a purchaser at such sale,
and as against such vendor and his representatives the sheriff's deed is com-
petent evidence.

**6.—Objection to Evidence.**

Where the objection to evidence is general, if it is admissible for any
purpose the objection is properly overruled.

**7.—Limitation—Possession—Act of 1891.**

Under the Act of 1891, an enclosure of 10,000 acres, embracing several

tracts belonging to other parties, is not such possession of said tracts as would put the statute of limitation in motion as to the same. To have this effect there must be separation or segregation of the land claimed by the owner of the enclosure from the other tracts, or actual possession or cultivation of one-tenth of the land claimed.

Appeal from the District Court of Matagorda County. Tried below before Hon. Wells Thompson.

*G. P. Daugherty, Gaines & Corbett* and *G. G. Kelley,* for appellants. —Service by publication being of statutory origin and in derogation of the common law, if such service is relied on, it must be in a case wherein that mode of acquiring jurisdiction is authorized by statute.

The first statute authorizing citation by publication to unknown heirs was enacted March 16, 1848. Early Laws of Texas, art. 1850, sec. 14; Paschal's Digest, art. 26; Byrnes v. Sampson, 74 Texas, 79; Stegall v. Huff, 54 Texas, 196; Fowler v. Simpson, 79 Texas, 611; Hollingsworth v. Barbour, 4 Peters (U. S.), 466; Nations v. Johnson, 24 Howard, 195; Webster v. Reid, 11 Howard, 460.

Under the Probate Act of 1840, where a suit is brought in the District Court against an administrator of an estate open and pending in the Probate Court, to foreclose a mortgage lien upon land, and a judgment is rendered against the administrator and the lien foreclosed upon the land, the decree should not order the land sold, but the decree should be certified to the Probate Court to be sold under proper order of the Probate Court; and a sale made by a sheriff under and by virtue of an order of sale issued on such a decree is void and passes no title to the land. Sayles Early Laws, art. 736; Paschal's Digest, arts. 1310, 1311; Graham v. Vining, 1 Texas, 639; Martin v. Harrison, 2 Texas, 456; Meyers v. Evans, 68 Texas, 466; Bradford v. Knowles, 86 Texas, 505.

Certificates of acknowledgments to deeds, in order to entitle them to record as duly recorded instruments, must contain the facts required by law, and must be signed by the officer officially, and sealed with his seal of office, and this has been the law of Texas continuously since May 12, 1846. Art. 4616, Rev. Stats.; Paschal's Digest, art. 507; Ballard v. Perry, 28 Texas, 347.

Title by limitation under the statute of three years can not be maintained by one claiming under a void execution sale. Rev. Stats., arts. 3340, 3341; Wilson v. Palmer, 18 Texas, 593; Stegall v. Huff, 54 Texas, 193; Meyers v. Evans, 68 Texas, 466.

Party claiming title by limitation under statutes of ten years, arts. 3343 and 3345, Revised Statutes, must show peaceable and adverse possession, cultivating, using or enjoying same for the full period of ten years, and the statute of 1891 provided that adverse possession was not shown where the inclosure embraced over 5,000 acres. Rev. Stats., arts. 3343, 3344, 3345 and 3346; Vineyard v. Brundrett, 17 Texas Civ. App., 147.

*Linn & Austin* and *J. W. Conger,* for appellees.—The Act of 1870, p. 141, sec. 229, was the first Act requiring the heirs to be made parties in suits involving the title of land, except that in the Probate Act of 1846, sec. 118, the heirs were required to be made parties in fore-

closure proceedings in land and slaves. Lawson v. Kelley, 82 Texas, 458, and authorities cited; Guilford v. Love, 49 Texas, 733; Peters v. Phillips, 19 Texas, 70; Shannon v. Taylor, 16 Texas, 415; Ottenhouse v. Burleson, 11 Texas, 87; Holt v. Clemmons, 3 Texas, 423; Gunter v. Fox, 51 Texas, 389; Howard v. Johnson, 69 Texas, 658; George v. Ryon, 61 S. W. Rep., 138.

The plaintiffs' suit herein, measured by the pleadings, was upon a bare legal title or right. Defendants in answer pleaded and set up equities and rights under the plaintiffs' vendor, Alley, superior to plaintiffs' title, whether legal or equitable. The trial disclosed the fact that plaintiffs' rights, if any they have, enures to them as heirs of the vendee Flack, in an executory sale of land, the purchase price of which and valid liens thereon have never been paid or discharged by them; but which have been paid, satisfied and acquired by defendants and their vendors. In such case and, in any event, plaintiffs can not recover without tendering and making payment into court of said sums, with legal interest thereon from date of payment. They are and were required to do this, whether the judgment or the sale, or both, were void; and not having done so, but having abandoned the contract for sixty years, they can not recover in this case. Thompson v. Robinson, 93 Texas, 166; Peters v. Clements, 46 Texas, 120; Ufford v. Wells, 52 Texas, 619; Webster v. Mann, 52 Texas, 416; French v. Grenet, 57 Texas, 278-282, and cases cited; Hudgin v. Hudgin, 6 Grat., 320; Northcraft v. Oliver, 74 Texas, 168; Halsey v. Jones, 86 Texas, 491, and cases cited; Folts v. Ferguson, 77 Texas, 305, 308.

REESE, ASSOCIATE JUSTICE.—This is a suit in trespass to try title, instituted in 1901, by Elisha M. Flack and others, heirs of Elisha M. Flack, deceased, against Franklin P. Dawson, Harriett B. Dawson, Emma J. Beasley and R. H. Kerr individually and as executor of the will of Harriett B. Parker, to recover the southeast quarter of the John Crier league of land in Matagorda County.

Defendants disclaimed as to all except one-half of the tract sued for, being a designated 555 acres, as to which they pleaded not guilty and the statute of limitations of three, five and ten years. They also pleaded specially their title, resting upon the following facts: Thomas Alley was common source of title. On April 14, 1837, Thomas Alley sold and conveyed the land to Elisha M. Flack, under whom plaintiffs claim as heirs. On the same day Flack executed to Alley his promissory note for $1,466.50, which defendants allege was for the purchase money of the land, and also a mortgage upon the land conveyed to him by Alley, to secure the payment of the same. This note not being paid, except the sum of $766.50, and Flack having died, William Alley, administrator of Thomas Alley, in 1842 brought suit in the District Court of Matagorda County for the amount due on the note and foreclosure of the mortgage lien against Robert D. Flack, alleged to be one of the heirs of Elisha M. Flack, and William D. Aldridge, alleged to be the administrator of said Flack, both of whom were alleged to be residents of Brazoria County, Texas, and also against "all the other heirs" of said Flack who are alleged to be not residents of the State of Texas. In this cause on September 9, 1843, judgment by default was rendered against the defendants

for the amount due on the note and for foreclosure, and ordering a sale of the land. Upon this judgment an order of sale issued to the sheriff, under which the land was sold to James Dennison to whom a deed was executed by the sheriff December 15, 1843. The consideration paid by Dennison was $377.74, which it is alleged was paid to Alley, administrator. It is alleged that defendants claim title under said James Dennison. Continuous possession and payment of taxes are alleged, by Dennison and his vendees, since the sale aforesaid.

The case was tried by the court without a jury which resulted in a judgment for defendants, from which plaintiffs prosecute this appeal. There are no conclusions of fact or law in the record.

The first assignment of error complains of the action of the trial court in admitting in evidence over the objection of appellants the judgment rendered on September 9, 1843, in the case of William Alley, administrator, against the heirs and representatives of Elisha M. Flack "because the judgment was rendered upon service by publication of a citation issued out of the District Court to the unknown heirs of Elisha Flack, and there was no law in existence at the time when said suit was brought and judgment rendered which authorized the issuance of a citation by publication upon unknown heirs, and therefore said court was without jurisdiction over said parties, and the judgment was void."

If it were necessary, in order to uphold the judgment, to hold that the notice by publication to the unknown heirs was sufficient to authorize the judgment, we would be inclined to so hold. It is true, as claimed by appellants, that there was no statute at the date of the suit to authorize such service, or indeed to authorize a suit or legal proceeding against unknown heirs at all. The Act of February 5, 1840 (2 Gam. Laws, p. 243, 244), provided for such service against defendants in suits to foreclose mortgages on lands. Doubtless many cases arose in which parties holding such mortgages, the maker being dead and his heirs unknown and nonresidents of the State, would be entirely without remedy, if foreclosure could not be had without such notice to them. It is not unreasonable to hold from the very necessity of the case in that early day, before the people had had time, in the arduous labor of establishing a government and formulating a system of laws and procedure for the protection of life and property, that the courts of the country would have had the right, if necessary to afford a remedy to its citizens, to adopt such kind of notice and to render judgment thereon, which would be at least good against collateral attack by such heirs. (Grassmeyer v. Beeson, 17 Texas, 529.) If, in the present case, the heirs of Flack were necessary parties to a suit to foreclose the mortgage, were nonresidents, and both their names and places of residence unknown, the holder of the mortgage debt would have been powerless to enforce the mortgage except upon some such notice or service as was had in this case. However, we find that the heirs of Flack were not necessary parties to the suit under the law as it then existed. (Cuney v. Shaw, 56 Texas, 438; Guilford v. Love, 49 Texas, 733; Gunter v. Fox, 51 Texas, 388; Thompson v. Duncan, 1 Texas, 489; Howard v. The Republic, 1 Texas, 84; George v. Watson, 19 Texas, 370.)

It was stated in the petition that William B. Aldridge was administrator of the estate of Flack, and that he resided in Brazoria County,

and the petition prays that "he may be cited to appear and answer, and that notice be given according to law to the other defendants." It must be presumed as against this collateral attack upon the judgment that this was done, there being nothing in the record to contradict such presumption. The citation by publication was not intended for the administrator, and it must be presumed in favor of the judgment, although it contains no recitals of service, that proper service was had upon him as prayed for in the petition. (Treadway v. Eastburn, 57 Texas, 213.) We hold that the court did not err in admitting the judgment in evidence. If the notice by publication to the unknown heirs was insufficient to authorize a judgment against them, the judgment against the administrator was sufficient to bind the property of the estate against which the foreclosure was had.

The second and third assignments of error complain of the action of the court in admitting in evidence over appellants' objection the order of sale, the return of the sheriff thereon, and the sheriff's deed to James Dennison "because the petition offered in evidence upon which the judgment was rendered showed that administration was pending upon the estate of Elisha M. Flack and therefore no execution could issue upon said judgment, nor could the property be sold thereunder, but said judgment should have been collected through the Probate Court." The deed was further objected to because it was not supported by a valid judgment.

We agree with appellants that under the Probate Act of 1840 (Sayles Early Laws, art. 736) which was in force at the time the judgment was rendered and the sale made, there was no authority for a sale of the property of an estate in process of administration, under execution issued out of the District Court upon a judgment against the administrator. (Graham v. Vining, 1 Texas, 639; Martin v. Harrison, 2 Texas, 456; Meyers v. Evans, 68 Texas, 466.) If there was nothing else to support the title of the purchaser at such sale, and those claiming under him, than the naked facts of such judgment, sale and sheriff's deed, we would hold that the court erred in admitting the deed in evidence, and that the sheriff's sale and deed did not pass the title of the estate in the land.

It is, however, insisted by appellees that the promissory note, to secure which the mortgage was given, was for the purchase money of the land upon which the mortgage was given. This fact is stated and repeated in appellees' answer and is assumed in their brief in this court. The brief of appellants is without any reference to the questions which inevitably arise in the decision of the case, if this fact be true. The record is barren of direct evidence upon the point. The deed from Alley to Flack is dated April 14, 1837. It conveys the land for a purported cash consideration of $4,000 without reference to the mortgage, or the note for $1,466.50, to secure the payment of which it is given. On the same day Flack executed the note, due in 90 days and payable partly in merchandise, and a mortgage to secure the same, upon the land, describing it, and referring to it as "the land this day conveyed" to him by Thomas Alley. Neither the note nor mortgage contains any reference to the debt as purchase money of the land. It appears that the deed and mortgage were signed by the same two persons as witnesses. It is thus reasonably apparent that they were executed simultaneously.

It must also be admitted that neither in the petition upon the note, nor in the judgment, is there any reference to the fact, if it be a fact, that the note was given for the purchase money of the land.

The land was appraised by sworn appraisers, under the statute, before the sheriff's sale in 1843, at thirty cents per acre, or the quarter of a league at $332.10, and was sold for $377.74. This tends very strongly to show that the $4,000 consideration recited in the deed from Alley to Flack was not the true consideration. It may be assumed that in those days appraisements made for the purposes of sheriff's sales were very loosely made, yet we can hardly believe that land which had in fact been sold in 1837 for $4,000 would be appraised, under oath, in 1843 for $332. The amount of the note, $1,466.50, while still apparently more than the land was worth, is much nearer such value, and it may be that, together with the purchase money, some other indebtedness may have been put in to make up this amount. It would have been a most unusual transaction for Flack to have paid Alley in cash for the land and simultaneously with the execution of the deed should have given him a mortgage on it to secure some other indebtedness. On the other hand, we know that it was the usual way at that time, in sales of land on a credit, to take, as security for the purchase money, a mortgage on the land. The present practice of reserving a vendor's lien in the deed is of comparatively recent origin. If the note represented in fact the purchase money of the land it would not affect the matter that it was not so stated in the mortgage, nor that the deed acknowledged receipt of the purchase money. It was a short time transaction. The note was payable in ninety days. It was not anticipated that it would be necessary to perpetuate the evidence that the note represented the purchase money of the land, by so reciting in either the note, deed or mortgage. The recorded mortgage with evidence readily at hand to show the character of the debt would afford the vendor ample protection for the short time that the note had to run. These circumstances might very reasonably account for the absence of any reference in the documents evidencing the transaction to the fact that the debt was for purchase money.

It is not unreasonable to indulge the presumption from the evidence in the record, in support of the title of appellees under which the land has been claimed, used and occupied for sixty years, without objection by appellants or any of them, notwithstanding that the condition of the title has been known to some of them for more than twenty years; that the note and mortgage sued upon were for the purchase money of the land. Having reached this conclusion, which we think we are justified in doing, it follows that, as in cases where the express vendor's lien is reserved in the deed, the superior title remained in Alley, the vendor, and after his death in his legal representatives, until the purchase money debt was discharged. This resulted from the execution of the mortgage, simultaneously with the deed, which had the same effect as the reservation of the vendor's lien in the deed.

Under a judicial sale upon a judgment for the purchase money and a foreclosure of such lien, the superior title of the plaintiffs in the suit and judgment would pass to such purchaser. This would clearly be true if such sale were valid. Would the same result follow in case of an unauthorized sale, such as was this sale, by the sheriff of the property of

an estate in course of administration upon execution or order of sale out of the District Court?

William Alley, the administrator, in whom lay the superior title for the benefit of the estate of Thomas Alley, having instituted this suit in the District Court to foreclose the mortgage lien given for the purchase money, and thus having put his superior title in issue and having procured a judgment of foreclosure, had a sale made by the sheriff and received the benefit thereof, would be estopped to set up that such proceedings, so instituted and carried out by him and of which he had received the benefit, were ineffectual for the purpose of passing to the purchaser the superior title. (Rorer on Judicial Sales, sec. 451; Freeman on Void Judicial Sales, sec. 41a; Brobst v. Brock, 10 Wall., 533, 534.) The effect of such a sale is well settled in this State. (Thompson v. Robinson, 93 Texas, 165, in which cases are cited.) The heirs of Flack might have attacked the sale as unauthorized and ineffectual to pass Flack's equity of redemption, which was a mere right to perfect his equity into a legal title by paying the purchase money for which the land had been sold with legal interest, but this right they could not assert after the lapse of sixty years. In this view of the case the evidence of the sale and deed by the sheriff was admissible. Its legal effect would be what has been indicated.

The fourth and fifth assignments of error, as stated in appellants' brief, do not present material error. The assignments present the question of the admissibility in evidence as recorded instruments of certain deeds in appellees' chain of title. The objection made is that they were acknowledged for record, one in 1869 and the other in 1870, before a judge of a court of record in the State of Illinois. There is no seal to the officer's certificate of acknowledgment, but immediately following such certificate and the signature of the officer, is a certificate of the clerk of the court of which the said officer is the judge, to the effect that he is the presiding judge of the court, etc., and to this certificate of the clerk is affixed the seal of the court. The objection was that the certificate of the judge did not have the seal affixed thereto. It is admitted by appellants that the deeds being ancient instruments and coming from the proper custody were admissible as such, but it is insisted that they were not admissible as duly recorded instruments in support of appellees' plea of the statute of limitation of five years. Appellants, however, further admit in their brief that the court, the case having been tried without a jury, found against appellees on this plea. In this view it can not be seen how the admission of the deeds as duly recorded instruments injured appellants. The trial court failed to file conclusions of fact and law although, as stated by appellants in their brief, a request had been made therefor, but no assignment of error is made for such failure. We assume that the statement in appellants' brief that the court in fact found against appellees upon their plea of limitations is correct. As we conclude that the judgment should be sustained upon another ground entirely independent of the limitations defense, it is not necessary to decide whether or not the deeds referred to were admissible as recorded deeds in support of such plea.

It must further be noticed that the objection of appellants to the admission of these deeds in evidence, as shown by their bill of exceptions,

was not limited to their admission as duly recorded deeds, as affecting appellees' defense of limitations, but the objection was general, and as appellants admit that they were admissible as ancient instruments the objection was properly overruled. The instruments offered were the original deeds. However, the ruling of the court if error, as complained of by appellants, was harmless.

We think that the evidence does not sustain the defense of limitation under either the ten or five years statute. The only actual possession was by G. C. Gifford who testified that he was in possession "for the owners" from 1887 to 1897, but his testimony shows that there was no inclosure of the land until 1892, and that such inclosure, if sufficient then to constitute such possession and appropriation as is required, included more than 10,000 acres of land, including several tracts belonging to various parties. After the passage of the Act of 1891 such inclosure would not support the defense of limitation where it included more than 5,000 acres, unless there was separation or segregation of the land claimed from the other tracts, or actual possession, or cultivation of one-tenth of the land claimed, none of which was shown. (Sayles Statutes, art. 3346.)

For the reasons indicated in this opinion we think that the judgment for appellees should be affirmed.

*Affirmed.*

Writ of error refused.