## COOKE v. CORONADO OIL CO. et al.

No. 15630—Opinion Filed Oct. 20, 1925.

1. Depositions—Testimony of Party to Action.

A deposition of a party to an action may be taken and used the same as that of other witnesses.

2. Depositions — Notary Public in Canada—Presumption of Authority.

Where a deposition is taken before a notary public in Canada and certified by him as such notary public as required by the laws of this state, it will be presumed, in the absence of some showing to the contrary, that he was, in effect, a notary public and authorized to administer oaths.

**3. Same—Showing as to Residence of Witness.**

Where a deposition is taken in a foreign country and the parties agree that the witness resides outside of the United States, his deposition may be used without further showing.

**4. Corporations — Mortgages — Absolute Deed of Corporation's Trustee as Mortgage — Priority Over Trustee's Subsequent Judgment Lien Against Corporation Property.**

Where one holding real property in trust for a corporation, of which he is president and general manager, executes a warranty deed to a third party to secure the payment of money loaned to the corporation and, with full knowledge of the purpose and intent of the conveyance, thereafter recovers a judgment against the corporation, such judgment is not a prior or superior lien to that of the grantee under the deed executed as a mortgage, although the deed was, in effect, an unrecorded mortgage.

**5. Taxation—Amount of Registration Tax on Additional Mortgage.**

If, subsequent to the recording of a mortgage on real property, on which all taxes had been paid as provided by chapter 84, art. 11, 1921 Statutes, an additional mortgage or other instrument, imposing a lien on property not described in the primary mortgage, is given for the purpose of further securing the indebtedness secured by the primary mortgage, and also to secure a further indebtedness or obligation other than that secured by the primary mortgage, it is taxable under chapter 84, art. 11 of the Statutes of 1921, on the new indebtedness or obligation only.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by George G. Cooke against the Coronado Oil Company, a corporation, and William Allen Black. Judgment for defendants, and plaintiff appeals. Affirmed.

Philip Kates and G. Byron Wolfe, for plaintiff in error.

George M. Porter and John L. Fuller, for defendants in error.

Opinion by RAY, C. April 3, 1917, the Coronado Oil Company, a New Jersey corporation with its principal office in Newark, N. J., of which George G. Cooke, plaintiff in error, plaintiff below, was president and general manager, owned certain oil and gas leases in Nowata, Tulsa, and McIntosh counties in this state and, desiring to buy other oil lands, borrowed $150,000 from Wm. Allen Black, a Canadian citizen, and mortgaged the property to secure its payment. Later, Cooke executed mortgages upon 3,000 acres of land held by him in trust for the company as additional security for the $150,000 so borrowed. The Coronado Oil Company also owned 5,000 additional acres bought from the Choctaw and Chickasaw Nations, upon which full and final payments had not been made. That land was also held in the name of George G. Cooke. In December, 1918, it became necessary for the Coronado Oil Company to raise the necessary money to pay the Choctaw and Chickasaw Nations about $17,000 as final payment on the lands. To that end an agreement was entered into in New York City on the 28th day of December, 1918, wherein Black agreed to advance the $17,000 and Cooke and the Coronado Oil Company agreed to convey the land here involved to Black to secure its payment, with an agreement to be signed by Black to reconvey the land when the indebtedness due him was paid, the papers to be held by W. A. Howell, as escrow agent, until the final payments were made by Black. This agreement, the deed from Cooke to Black, and Black's agreement to reconvey upon payment of the indebtedness due him, were deposited with Howell, as escrow agent. Black delivered to him the sum of $17,000. Upon the receipt of that money Howell went to Oklahoma, made final payment, and the deed was delivered to Mr. Black and placed of record. The deed was dated December 27, 1918. Soon thereafter Cooke was ousted from his position as president of the company, since which time he has had no control or management of that company's business. Upon change of management the Coronado Oil Company attempted to operate its properties in Oklahoma under some character of a trust agreement until July, 1921, when the trustees ceased to operate it, because of inability to meet the operating expenses, and turned the properties over to Black. On the 27th day of September, 1921, at a special meeting of the stockholders of the Coronado Oil Company, which was held for the purpose of devising some way of getting relief from its financial difficulties, a resolution was adopted authorizing the directors to take the necessary steps for that purpose.

Pursuant to that resolution assignments of all the oil and gas leases in Tulsa, Nowata, and McIntosh counties were executed

to Black, and he took charge of all the properties of the company in the state. He thereafter operated the leases and paid taxes on the property, keeping accounts thereof. At the time this loan was made to the company by Black, the company was indebted to George G. Cooke, its president. After he was relieved from the presidency of the company, a note was executed to him for the amount due, and in 1921 he commenced suit against the Coronado Oil Company in the district court of Tulsa county, and November 13, 1922, a judgment was rendered in his favor against the Coronado Oil Company for $29,294.66. A transcript of that judgment was filed in the office of the court clerk in Pittsburg county, and affidavits showing the pendency of the present action were also filed in Hughes and Coal counties.

This suit was commenced in the district court of Pittsburg county January 23, 1923, by George G. Cooke against the Coronado Oil Company and Wm. Allen Black to have the deeds executed by the plaintiff, George G. Cooke, to Wm. Allen Black adjudged to be mortgages, alleging that it had been fully paid, and to have his judgment against the Coronado Oil Company declared to be a prior and superior lien to that of the defendant Black.

The defendant Black, by his answer and cross-petition, denied generally each and every allegation of plaintiff's petition and alleged that the warranty deed in question was in fact a mortgage and executed to secure the payment of the monies loaned to him by the Coronado Oil Company, and asked to have the mortgage foreclosed. The plaintiff, Cooke, by his reply, alleged that the warranty deed to the 5,000 acres of land in Cooke, Pittsburg, and Hughes counties, was given as a mortgage to secure the $17,000 advanced to make the final payments on the land only, and it had been fully repaid by extinguishing the mortgage lien, and by an amended reply alleged that the defendant Black had been fully repaid for all the money loaned by him to the Coronado Oil Company by transferring to him all of the property of the Coronado Oil Company situated in Nowata, Tulsa, and McIntosh counties.

The defendant Coronado Oil Company filed general denial to plaintiff's petition, and in a separate answer to the cross-petition of the defendant Wm. Allen Black, admitted that the deeds executed by that company and by George G. Cooke were in fact mortgages, and admitted that the sum claimed by him was just, due, correct, and unpaid.

Judgment was for the defendant Black, and George G. Cooke, plaintiff, has appealed.

Error in overruling plaintiff's motion to suppress the deposition of the defendant Wm. Allen Black, taken before a notary public in Canada, and in admitting that deposition in evidence, is urged as grounds for reversal: (a) Because it was not affirmatively shown that the notary public had authority to administer an oath or that he was in fact a notary public; (b) because Wm. Allen Black, being a party to the action, was not a witness within the meaning of the statute permitting the evidence of a witness to be taken by deposition; and (c) because it was not affirmatively made to appear at the trial that the defendant Black was unable to attend the trial as a witness, due to some legal cause.

(a) Section 615, C. S. 1921, provides that depositions may be taken out of this state by a notary public. The Supreme Court of Kansas in Re Huron, 48 Pac. 574, in construing a similar statute, held that the general power without any exception or limitation is given to notaries public to take depositions. In R. C. L., vol. 8, page 1143, it is said that an officer taking depositions is presumed to have authority to do so until the contrary appears.

At the time the deposition was taken, in response to questions asked by the attorney for plaintiff, the notary public answered, "I am a notary public for the Province of Quebec." When asked by whom he was appointed or commissioned, he answered, "By the body known as the Board of Notaries. It is constituted by the statutes of the provincial Legislature." When asked if he knew the date and number of the statute, he answered, "I cannot tell you that at the moment, but I can supply the information if desired." No further questions were asked him.

The only authority cited by plaintiff in error in support of this contention is 18 Corpus Juris 619:

"The notary public has no such authority (to administer oaths) under the common law. His power in this regard is purely statutory, and will not be enlarged by implication."

Conceding this to be a correct statement of the common law, we think it has no application here. The testimony of the no-

tary public was that he was commissioned as a notary public under the statutes of the Province of Quebec. His certificate is in all things regular and in compliance with the statutes of this state.

(b) We think this question was correctly decided by this court in Re Abbott, 7 Okla. 78, 54 Pac. 319. The second paragraph of the syllabus is as follows:

"A party to a suit is a competent witness for himself, and may be called as a witness by his adversary, and his deposition be taken. He stands precisely as any other witness with relation to the suit in relation to his obligation to testify, and he may be dealt with the same as any other witness who refuses to obey a subpoena or an order to be sworn and testify."

Section 385, C. S. 1921, provides that no person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same as a party or otherwise. Section 606 authorizes the taking of the deposition of a witness. These sections of the statute appear to make no distinction whatever between parties to the action and other witnesses. Since these statutes place the parties to the action on the same footing as other witnesses, and provide for taking depositions of witnesses without making any distinction between parties to the action and other witnesses, we think the taking of depositions of parties to the action, in the same circumstances that the depositions of any other witness may be taken, is authorized. This view of the law is sustained in Nash v. Williams, 20 Wall. 226, 22 L. Ed. 254; Doherty v. Healy, 36 Colo. 460; Hart v. Eastman, 7 Minn. 50; Roberts v. Parrish, 17 Ore. 583, 22 Pac. 136; Abshire v. Mather, 27 Ind. 381.

The only authority cited by the plaintiff to sustain his contention that the deposition of a party to an action is not authorized is an Alabama case (Winter v. Ellmore, 88 Ala. 555), where an act of the Legislature of that state adopted in 1852 was under consideration. It was stated in the opinion that at the time of the adoption of the statute parties were not competent witnesses and were clearly excluded by both the letter and spirit of the law.

(c) Section 626 provides that when a deposition is offered in evidence, it must appear to the satisfaction of the court that for some legal cause the attendance of the witness could not be procured. That legal cause is made to appear by section 612. It specifies when the deposition of a witness may be used:

"The deposition of any witness may be used only in the following cases: First. When the witness does not reside in the county where the proceeding or action is pending, or is sent for trial by a change of venue, or is absent therefrom."

We think under these sections of the statute, that when it is made to appear to the satisfaction of the court that the witness does not reside in the county where the action or proceeding is pending, a legal cause has then been established for not procuring the attendance of the witness, and renders the deposition admissible in evidence in the absence of some showing that the witness is at the time within the jurisdiction of the court. In this case, the plaintiff alleged in his petition that the witness, Wm. Allen Black, was a resident and citizen of Canada. In the motion to suppress the deposition, it was stated that the witness was an alien and not a citizen or resident of the United States or any of its territories. It was stated by counsel for defendant Black that when the cause was regularly set for trial on the 18th day of February, he arranged for the defendant Black to be present; that when the case was reset for the 25th, he wired Mr. Black to that effect, and Black wired back that he made engagements to be in London, and was leaving on the 27th for England, and that he was going on a business engagement that had been made a number of weeks before. Clearly this furnished a sufficient showing for the admission of the deposition.

Fullenwider v. Ewing (Kan.) 1 Pac. 300, is cited by plaintiff. It is no authority for the contention. In that case, when the deposition was offered, the witness was in the courtroom under subpoena, and of course it was held that the deposition was not admissible.

The contention that the warranty deed executed by plaintiff, Cooke, to Black December 27, 1918, was not admissible in evidence, for the reason that it was not shown that the proper registration tax had been paid to the county treasurer and apportioned to the three counties in which the land was situated, is without merit. When the deed was offered in evidence by the defendant Black, it was excluded upon the ground that it was not shown that the mortgage registration tax had been paid. It was later offered with the certificate of the county treasurer, showing that $68 tax had been paid, but it was not made to appear that the tax had been apportioned to the three counties according to the value

of the property. Section 9590 provides that where an additional mortgage is recorded upon property not originally covered by the primary mortgage, such additional instrument or mortgage shall not be subject to taxation unless it creates or secures a new or further indebtedness other than the principal indebtedness, in which case the tax is imposed upon the new or further indebtedness or obligation, and section 9590 makes it the duty of the county treasurer to apportion the amount of the tax so paid to the counties where the land was situated on the basis of the relative assessments. That duty rests upon the county treasurer and not upon the holder of the mortgage.

The contention that under section 1 of art. 22 of the Constitution and section 6646, Rev. Laws 1910, which prohibit aliens from acquiring title to or owning land in this state, defendant Black cannot enforce his lien, is likewise without merit. It is conceded in the briefs and oral argument that no one but the state can question the holding of land by an alien, but it is contended that an alien cannot set up a title to land as against the lien of a citizen of the United States. The defendant Black in this case is not setting up title to the property. It is alleged by the plaintiff in his petition, and by Black in his cross-petition, and admitted by the Coronado Oil Company in its answer, that the deed was executed and delivered as a mortgage and not as a deed. No authority is cited to support the contention, and neither the Constitution nor the statute deprives an alien of the right to enforce liens.

In brief and oral argument it is contended that the deed given as a mortgage was to secure the $17,000 advanced by Black to make the deferred payments due the Choctaw and Chickasaw Tribes of Indians, and for no other sum. The plaintiff, Cooke, testified that he so understood it, but the evidence is overwhelmingly to the contrary. At a meeting of all the parties in the law office of Breed, Abbott & Morgan, in New York City, just before the plaintiff, Cooke, was relieved from the office of president and general manager of the company, and when Cooke knew that his relations with the company were to be severed, Black agreed to furnish the $17,000 to make the advance payments. That proposition was accepted and the deed to the land was executed by Cooke and placed in the hands of W. A. Howell to be held in escrow to be delivered to Black upon payment of the $17,000 to Howell to be applied on the deferred payments. Black executed an agreement to reconvey the property to Cooke upon payment to him of all the money advanced by him in purchase of the property with interest thereon on or before March 29, 1919. This agreement was likewise deposited with the escrow agent. The testimony of both Black and Howell was that the deed was intended as additional security for all the money due or owing to Black. It was likewise the understanding of the officers, directors, and stockholders of the Coronado Oil Company. In September, 1921, at a meeting of the stockholders, all of the acts of the officers of the company in dealing with Black were approved, and the directors were authorized by resolution to take any steps considered by them necessary and proper to extricate the company from its financial difficulties. Pursuant to that resolution, the board of directors authorized and the officers executed assignments of all the oil and gas leases to Black, and also quitclaim deeds to all the real estate owned by them in Oklahoma, with the understanding and agreement that Black pay all the expenses and operate the leases until a sale should be made of the property, and when a sale should be effected, the money should be applied to the indebtedness due Black, and all sums received above the amount of the indebtedness and expenses should be delivered to the company for distribution among the stockholders.

It is contended that the deed to Black December 27, 1918, was, in effect, an unrecorded mortgage, and that the judgment of Cooke was a prior and superior lien. It is true that the recorded deed alleged by the plaintiff, the defendant Black, and the defendant Coronado Oil Company to have been executed as a mortgage to secure the payment of indebtedness was, in effect, an unrecorded mortgage, but it being an unrecorded mortgage in no way affects the parties in this case. The object of the registration law is to give constructive notice to the public and third parties, but constructive notice is unnecessary where the parties involved have actual notice. In this case, the plaintiff, Cooke, was a party to every transaction between the Coronado Oil Company and Black up to and including the time of the execution of the deed December 27, 1918. It is contended that the deed, being a blanket mortgage, conveyed no notice of the amount intended to be secured, but Cooke had actual notice of the entire transaction, including the purpose of the execution of the instruments and the amount to be secured.

It is contended by the plaintiff that when the defendant Black took possession of the property in July, 1921, it was a taking over of the property in settlement and payment, of the indebtedness under the terms of the mortgage. The only evidence that the defendant Black took over the property in July, 1921, was the testimony of the defendant Black, who testified that the trustees in control and operating of the property for the Coronado Oil Company notified him that they had ceased to operate the property for the reason that it was not paying expenses, and the trustees asked him to take it over, which he did, and from there on continued to operate the leases, pay the taxes on the property and other expenses incident to the management, charging it up to expenses, and giving credit for receipts. The mortgage provided that in case the note was not paid when due, or the covenant in the mortgage was broken, Black could declare the whole sum due and foreclose his lien, and in the event he should at any time feel himself insecure for any cause, he was authorized to take any one of the following methods to enforce his lien, including costs, expenses and attorney's fees. First, he was authorized to take charge of the leasehold estate and all the property described, maintain, operate and control the property, and apply the proceeds derived after payment of royalties and operating expenses on the payment of the note until it was fully paid; or, second, to take possession and sell all the property under the law of the state of Oklahoma applicable to the foreclosure of mortgages; or, third, upon suit brought to recover the sum due, was authorized to apply and have appointed a receiver of all the property as a matter of right and without a showing of insolvency, fraud, insecurity, or mismanagement, and agreed that a receiver might hold and maintain the property, etc., and in case any sale was made of the property by Black, it was agreed to execute any and all property and instruments in writing necessary to make a valid sale of the property. It is clear from the evidence, that Black, in taking charge of the property in July, 1921, elected under agreement of the parties to operate the property, debiting and crediting the Coronado Oil Company according to expenses and receipts. It is clear from the evidence that such taking was not intended by the parties as a settlement of the indebtedness.

It appears that at the time the $17,000 was advanced by Black, and Cooke executed the deed of December 27, 1918, the Coronado Oil Company was indebted to Cooke, and after Cooke severed his relations with the company, it executed a promissory note to Cooke for the amount due and Cooke later recovered judgment on the note against the Coronado Oil Company in Tulsa county, being the judgment sought to be impressed by this suit upon the lands of the Coronado Oil Company as a prior and superior lien to that of Black's mortgage lien. It is contended that by reason of Black's connection with the Coronado Oil Company as a stockholder and director, he had notice of the company's indebtedness to Cooke, and for that reason Cooke's judgment lien should be impressed as a prior lien to that of Black's unrecorded mortgage. We are unable to see any force in this argument. Whatever lien Cooke has against the real property of the Coronado Oil Company in Coal, Pittsburg, and Hughes counties, is by reason of a filed transcript of the judgment recorded in Tulsa county with full knowledge of Black's lien created by the execution of the warranty deed by Cooke of December 27, 1918. We think in this particular the equities are with Black, for Cooke by executing the deed intended as a mortgage induced Black to advance an additional $17,000 without any intimation of an intention to claim a prior lien by reason of the indebtedness due him from the Coronado Oil Company.

**The judgment is affirmed.**

**By the Court: It is so ordered.**

Note.—See under (1) 18 C. J. p. 611, §12. (2) 18 C. J. p. 624, § 33. (3) 18 C. J. p. 741, § 357. (4) 34 C. J. p. 610, § 927. (5) 37 Cyc. p. 787.